Filed 8/24/20  In re S.S. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re S.S. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JOANNA M.,<br><br>Defendant and Appellant. | F080123<br><br>(Super. Ct. Nos. 19CEJ300167-1, 19CEJ300167-2, 19CEJ300167-3, 19CEJ300167-4, 19CEJ300167-5, 19CEJ300167-6, 19CEJ300167-7)<br><br>**OPINION** |

APPEAL from orders of the Superior Court of Fresno County.  Brian M. Arax, Judge.

Nicholas J. Mazanec, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Kevin A. Stimmel, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

At a combined jurisdictional and dispositional hearing, the juvenile court found seven minor children were described by Welfare and Institutions Code section 300, subdivision (b)(1)[1] due to risk resulting from Joanna M. (mother) and Douglas M. (father) leaving the children alone in the care of one of the children, a 14-year-old, every day for five to six hours and engaging in domestic violence in the children's presence. The court ordered the children be removed from the parents' custody and the parents be provided with reunification services. Though the parents had actual notice of the hearing, neither was present. Mother's recently appointed counsel had not had the opportunity to speak with mother since her appointment and requested a continuance, which the court denied before proceeding with the hearing in the parents' absence.

Mother appeals the jurisdictional and dispositional orders. She contends (1) there is insufficient evidence to support the juvenile court's findings for jurisdiction and removal of the children from her custody; (2) the court erred by denying counsel's request for a continuance; and (3) her counsel's failure to communicate with her, object to an alleged incorrect fact in the reports, and more thoroughly request a continuance constituted ineffective assistance of counsel. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On May 7, 2019,[3] Fresno Police Department officers responded to a motel because six-year-old M.M. was observed wandering near a busy street unsupervised and had stopped traffic by attempting to walk out into the street. M.M. was in the care of her 14-year-old half sibling, S.S., along with five other siblings, 11-year-old D.M., eight-year-old K.C.M., four-year-old K.L.M., three-year-old K.B.M., and 10-month-old

---

**1**    All further undesignated statutory references are to the Welfare and Institutions Code.

**2**    Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names and/or initials. No disrespect is intended.

**3**    All further references to dates are to dates in 2019.

K.A.M. The children lived in a motel room with mother and father[4] and two dogs. It was the second time the police had been called under the same circumstances. A referral was made to the Fresno County Department of Social Services (department), and a social worker responded to the motel room.

When the parents arrived at the motel, over an hour after the initial call, father reported to law enforcement he was at a job interview and mother was at the mall getting a watch repaired. Mother reported she and father were at a job interview. Mother told the social worker this was only the second time she had left the children alone. Mother reported she home schooled the children. Law enforcement, however, observed no school materials or evidence the children were being schooled.

The children who were old enough to provide statements to the social worker reported that they all were left in S.S.'s care for five to six hours every day while the parents were out looking for work or doing other things.

S.S., K.C.M., and M.M. reported domestic violence in the home in the form of yelling, cursing, and pushing. S.S., K.C.M., and M.M. also reported that father "smacks" S.S. across the butt and face. M.M. reported feeling afraid when the parents engaged in domestic violence.

The children were placed into foster care.

The next day, mother reported to the social worker that she left the children in the care of S.S. once a week and that M.M. had only wandered off alone twice. Mother reported she had called 911 two to three weeks prior due to a domestic violence incident. She denied the altercation was physical but felt she needed the police.

S.S. reported the children had not received any schooling in the year 2019. She also told the social worker that when mother was saying goodbye to the children when

---

[4] Father is the presumed father of all children except for S.S. S.S.'s alleged father, Marcus S., was not located for participation in the proceedings.

they were being taken into protective custody, mother hugged all the children except S.S. and told S.S. that "because of you, my kids are being taken away."

A Team Decision Meeting (TDM) was held on May 9. Mother and father arrived for the meeting. Father left without participating, but mother stayed. A safety plan could not be made because there were no family members or mentors available to provide care for the children. Voluntary family maintenance services were not offered due to the department's belief there was a continued high risk to the children's safety.

The department filed a petition on behalf of all seven children alleging they came within the juvenile court's jurisdiction under section 300, subdivision (b)(1). It was alleged the children had suffered, or were at substantial risk of suffering, serious physical harm or illness as a result of (1) the failure or inability of the parents to supervise or protect the children adequately, and (2) the willful or negligent failure of the parents to provide the children with adequate food, clothing, shelter, or medical treatment. Counts b-1 and b-2 alleged that on May 7, law enforcement found M.M. wandering alone near a busy street and the parents had left the children in the care of S.S., and had done so every day for five to six hours. It was also alleged in counts b-1 and b-2 that the parents were unable to provide care to the children due to substance abuse issues.[5] Counts b-3 and b-4 alleged that the parents had exposed the children to an unsafe environment of domestic violence and the children had witnessed the parents yell, scream, and push each other.

The detention hearing was held on May 10. Both parents were present and were appointed counsel. The parents denied the allegations and submitted on the issue of whether a prima facie showing for detention had been established. Mother's counsel noted mother had informed him the detention report was "by and large false, and it has a lot of inaccuracies and incorrect details. [¶] [Mother] in particular highlighted the

---

[5] As the juvenile court struck the allegations pertaining to substance abuse at the combined jurisdictional and dispositional hearing, we limit out references to substance abuse in our recitation in the facts.

4.

section under legal history and said that nothing under there is actually true. She said it's a different child, apparently."**6** The parents did not waive time and requested the jurisdictional and dispositional hearings be set as soon as possible. Because neither party stipulated to detention and mother was disputing facts in the report, the court set the matter for a contested detention hearing on May 16.

Neither parent was present at the contested detention hearing. The court found the parents had failed to appear and found no good cause to excuse their absence or continue the hearing. The court held that a prima facie showing had been made that the children were persons described by section 300, ordered the children detained from the parents, and set a jurisdiction hearing for June 4. The court ordered the department to provide the parents with parenting education, substance abuse assessment and recommended treatment, random drug testing, domestic violence index assessment and recommended treatment, and mental health evaluation and recommended treatment. Father subsequently refused to discuss the case with the social worker, and both parents believed their children would be returned to them at the June 4 hearing.

On June 4, both parents were present. The department requested the allegations in the petition be found true and that a disposition hearing be set in 30 days in order for the department to assess the potential applicability of reunification services bypass provisions to the parents. Mother's counsel noted he was recently appointed, and father requested the matter be set for contest. The court set a contested, combined jurisdictional and dispositional hearing for September 9. The court also calendared two settlement conferences, one on August 6, and one on September 3.

---

**6** In the detention report, the department indicated that the family "may have [Child Protective Services] history in St. Louis, Missouri" with regard to another of mother's children who was not included in the petition. It was noted the child had a case under "courtesy supervision" in Orange County, which closed when legal guardianship was granted to paternal grandparents by the juvenile court of St. Louis, Missouri.

Shortly after removal, M.M. exhibited difficult behaviors in her placement such as hitting and kicking and attempting to leave the home, necessitating a change in placement. The children reported to the caregiver that this was M.M.'s everyday behavior. A few days after she was taken into protective custody, M.M. was hospitalized and placed on a section 5150 hold and was given a differential diagnosis of suicidal ideation, bipolar, schizophrenia, and insomnia. She exhibited violent behavior toward the nurses, as well as self-harm. After approximately three weeks of hospitalization, she was discharged and transported to a short-term residential therapeutic program (STRTP) home.

Mother was subsequently heard criticizing and blaming S.S. for the removal of her siblings, saying things like "you got what you wanted" and "I am glad [M.M.] is acting up so I can say Ha Ha, now the kids will have to be returned to me." The department requested the parents be placed on the waiting list for therapeutically supervised visits so they could receive additional coaching and support to learn appropriate parenting skills and how to interact with their children in a healthier way.

In June, K.L.M. again reported to the social worker that S.S. was the one who cared for the children and the parents would leave "all of the time" and come back "late." K.C.M. reported the parents were usually out of the home until midnight. D.M. reported that he and S.S. were responsible for the younger children. M.M. reported the parents told her S.S. was in big trouble for not watching them the day they were taken into protective custody.

Later in June, after a visit with her parents, S.S. was taken to the hospital due to her engaging in self-harm. A section 5150 hold and subsequently a section 5250 hold was placed. After being discharged, she was placed in a foster home. S.S. later reported that father was a trigger to some of her self-harming thoughts. She expressed she wanted to continue visiting with her siblings and mother but no longer wanted to visit with father.

6.

As a result of a mental health assessment, S.S. had been participating in weekly treatment due to symptoms of sadness, worthlessness, guilt, worry, and fear.

D.M. had significant delays in reading and writing and was reported by the parents to have autism. An IEP meeting was supposed to be held in May, but because father made threatening statements to the social worker, the meeting had to be canceled. K.B.M. and K.A.M. both appeared to have developmental delays.

In its disposition report, the department requested educational rights be suspended for the parents as their actions had delayed educational services needed for D.M. and had made comments indicating they would continue to delay educational services for the other children.

Father declined to participate in services and informed the department he would not do so until ordered by the court. Mother stated she wanted to participate in services but would only do so in Stanislaus County, where she claimed she and father lived. The parents, however, failed to be present at an appointment with the department and otherwise follow through with verifying the residence.

The department recommended the children be adjudged dependents of the court and father be bypassed for services pursuant to section 361.5, subdivision (b)(10).[7]

Both parents were present at the August 6 settlement conference. Father's counsel declared a conflict. The court relieved counsel and appointed father a new attorney. The court stated it was going to keep the September 3 date for a settlement conference and the September 9 date for trial but noted "if parties are requesting a continuance in order to

---

[7] Section 361.5, subdivision (b)(10) provides that reunification services need not be provided if the juvenile court finds by clear and convincing evidence that the court ordered termination of reunification services for any sibling or half sibling of the child because the parent failed to reunify after the child had been removed from his or her custody and the parent has not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling or half sibling.

prepare for the disposition portion of the trial, we will certainly discuss that when we're back here on September 3rd."

On August 12, the department filed a section 388 petition requesting the court suspend visitation between the parents and S.S. The petition alleged that the parents have blamed S.S. for the removal of the other children. It alleged that at a visit in June, father disclosed he was contemplating filing criminal charges against S.S. for lying when the children were removed and mother had made comments implying that S.S. was participating in sex trafficking. Following the visit, S.S. had feelings of self-harm and was hospitalized after expressing that the actions by her parents led to her feelings of self-harm. S.S. expressed she no longer wanted to visit with her parents.

On August 26, mother filed a statement of contested issues, including whether (1) there was a basis to find the children were described by section 300, subdivision (b); (2) there was clear and convincing evidence supporting the removal from mother's custody; (3) the children should be placed with their maternal grandmother; and (4) there were other reasonable means the department could exercise to prevent the need to suspend visits between mother and S.S.

On September 3, mother's counsel declared a conflict.

Neither parent was present at the September 3 settlement conference. The parents checked in at 9:30 a.m. for their 8:00 a.m. appearance and at 10:24 a.m., when the case was called, they were not present. The court noted the parents were provided with a pager; the court paged for their appearance but it appeared the parents were not in the building. The court waited 12 minutes to call the case after the parents were paged, but they failed to appear. Attorney Errin Woodward was present to receive appointment for mother.

Minors' counsel requested the court to consider "defaulting" as the parents had also failed to appear at the detention hearing they had set for contest. Woodward objected to "defaulting" the parents and stated she did not have enough information to

make an argument on behalf of mother nor did she have discovery. Woodward requested the court to continue the September 9 trial date. The court noted it would not "default" the parents despite minors' counsel's request but confirmed the September 9 date. The court appointed Woodward for mother. The court commented: "In the event that the parents do appear on September 9, this Court has a number of issues it would like to address with the parents and needs to address with the parents, and without the parents having a future court date, the Court is going to hold that September 9 hearing with the understanding that it does not appear that the attorneys will be ready for trial on that date and time." Father's counsel informed the court she would only be available for a late morning appearance on September 9. The court noted in response: "The Court is concerned that the parents rarely appear on time and stay at the courthouse. They have a history, as the record will reflect, of appearing simply when they want to appear and simply vacating when they're ready to leave. This Court does feel it is appropriate to leave the September 9th date in place, understanding that there may be availability issue for counsel. But we will work through that once the parents arrive, and we're going to hold out hope that they arrive on [September 9]."

Neither parent appeared at the September 9 hearing. The court gave a procedural history of the case, noting the parents' failure to appear at the contested detention hearing and the settlement conference.

County counsel requested the court to proceed in the parents' absence based on the length of time since detention and the fact the parents were not engaging with services. Father had failed to participate in the Family Reunification panel's disposition assessment of applying the bypass provision to him. Woodward, who was also specially appearing for father's counsel, informed the court she did not have the department's section 388 motion with respect to visitation with S.S. She objected to the court granting the petition and stated, "I don't have any further evidence without [the parents] present."

9.

Woodward also explained that the parents were in fact in the court building on September 3, and father's counsel had spoken with father but that Woodward was unable to speak to mother as she was outside the court building. Woodward indicated she had no information as to why the parents were not present on September 9. Woodward requested that when father's counsel arrives at court, that they be allowed to cross-examine the social worker "and I think that would probably be the only thing we can do at this point without the assistance of our clients." The court asked Woodward what types of issues would be the subject of cross-examination, and Woodward responded, "[w]ithout the assistance of my client I don't have many questions for the social worker at all. I think [father's counsel] might because of the bypass issue." The court recessed so father's counsel could be present.

When the court went back on the record later that day, another attorney from Woodward's office, Brent Woodward, appeared in place of Woodward. The following colloquy occurred:

> "MR. WOODWARD: … I am aware that when the Court called the matter earlier this morning the Court went through recitation of the parents['] difficulties or lack of diligence in attending prior court hearings.

> "THE COURT: Exact idea. Thank you.

> "MR. WOODWARD: And certainly our understanding that the Court is not inclined to grant further continuance under these circumstances simply for the reason that we don't know why the parents aren't here but for the record just to make it clear from an advocacy point of view we wanted to note that that request is being made as a first preference not having the parents here and on behalf of Mrs. Woodward not having the mother here specifically so recognizing the Court is certainly inclined to deny that request we're submitting otherwise.

> "THE COURT: Well, we grant continuances on good cause so you're not announcing any facts of good cause that you know of at this point but standard of care and all things being equal, Judge, we'd love to have them heard and that's what it's all about in Court.

10.

"MR. WOODWARD: That is right."

Father's counsel indicated she spoke to father after the September 3 settlement conference and had since tried to obtain his assistance to prepare for trial without success. Counsel explained father was aware of the date for trial but expressed he did not believe it was going to happen despite counsel's insistence.

The court stated, "We were continuing with the idea being that we would like cross-examination of our social worker and, you know, parents when they're not here and there's no good cause we're going to proceed given this four months since removal, three months in setting, how long it takes us to get to the next trial date and need for permanence and stability and the two youngest are quite young, and the number of children in a separate placement. All of that very strong for proceeding on permanence and stability today but we can cross-examine the social worker." Father's counsel indicated she would not be cross-examining the social worker in light of the court's indicated ruling off the record that services would be offered to father.

The court found the children were described by section 300, subdivision (b)(1). The court noted the "neglect is profound" and held all seven children were at risk of harm. The court pointed out that the two youngest children were at such an age where they could not report or protect themselves. The court went on to outline S.S.'s and M.M.'s mental health issues; that D.M. had struggles with reading, writing, and math and that the parents reported he had autism; and K.B.M.'s and K.A.M.'s developmental concerns. The court also noted there was a "theme of transience and instability, financial and living [arrangement] wise." The court highlighted the parents' prior child welfare history, noting it spread across six counties, including the St. Louis, Missouri, case as well as Orange, San Diego, Stanislaus, Lake, and Fresno.

The court then noted: "The main factors [supporting jurisdiction] are leaving the children unattended with expressions of risk to all the children[,] parentification to the oldest, the other children including those with special needs and most dramatically

11.

[M.M.]" Noting the evidence was insufficient to support a finding that the parents had substance abuse issues, the court stated it was "enough in (b)(1) and (b)(2) to say that the child … has been found w[a]ndering the street with the … five to six hours every day. That's plenty…."

As to counts b-3 and b-4, the court noted: "The fact that there has been inappropriate physical discipline without question described by every single child except for one and domestic violence in the presence of the children complicates the risk factors and [are] independent grounds [for] jurisdiction" and found the b-3 and b-4 counts true.

The court found that continuance of the children in the parents' home would subject the children to substantial danger to their physical health and emotional well-being with no other reasonable means to prevent removal based on the jurisdictional risk factors it had already stated on the record.

The court ordered both parents be provided with reunification services. The court held the department had not met its burden of proving the bypass provision applied to father. The court further noted that in any event it was in the best interests of the children for father to receive services because the parents were an intact couple and "we're certainly not facilitating permanence and stability by denying [father's] services."

The court granted the department's section 388 petition as to suspending visitation with S.S. and also noted it found by clear and convincing evidence that visitation was detrimental. The court noted it was a "temporary finding" pending S.S.'s participation in mental health services and the parents' engagement with services.

Mother appealed.

## DISCUSSION

### I.   Sufficiency of the Evidence

Mother argues that the court's jurisdictional findings and removal findings were not supported by sufficient evidence. We disagree.

12.

We review the entire record in dependency proceedings to determine whether the trial court's jurisdictional and dispositional findings are supported by substantial evidence, meaning evidence that is reasonable in nature, credible, and of solid value. (*In re D.B.* (2018) 26 Cal.App.5th 320, 328.) Issues of fact and credibility are the province of the juvenile court, and we neither reweigh the evidence nor exercise independent judgment when reviewing jurisdictional and dispositional orders in child dependency proceedings. (*In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.)

### A. *Jurisdictional Findings Under Section 300, Subdivision (b)(1)*

A child comes within the jurisdiction of the juvenile court under section 300, subdivision (b)(1) when, as relevant here: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, … or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment …."

Mother asserts the juvenile court inappropriately took jurisdiction for reasons related to poverty only; as she puts it—"food insecurity, lack of provisions, crowded and unstable living conditions." While the parties agree, as do we, that poverty cannot be the sole basis of dependency jurisdiction (see *In re G.S.R.* (2008) 159 Cal.App.4th 1202, 1215 [a finding of detrimental return to custody of a parent cannot be based on poverty]; see also *In re P.C.* (2008) 165 Cal.App.4th 98, 99–100 [same]), we find mother's premise is not supported by the record.

Though the court mentioned transience and instability as risk factors in its jurisdictional ruling, when read in the totality of the court's comments, these reasons were by no means the court's sole reasons for taking jurisdiction. The court expressly stated, "I think there are loads of jurisdictional justifying facts here. Oodles of evidence on multiple grounds." The court then found true the petition's counts, as amended on the record, expressly taking jurisdiction because the parents (1) left the children alone, with

S.S. in charge every day for hours at a time, sometimes extending late into the night (counts b-1 and b-2) and (2) engaged in domestic violence which extended to S.S. (counts b-3 and b-4).

The court's findings were supported by evidence on the record, as was the court's reasonable inference that these acts or omissions caused the children to be at substantial risk of harm. As a result of the parents' actions as alleged in the first two counts, M.M. had gotten away and was wandering near traffic. M.M. had mental health issues and exhibited violent and otherwise difficult behaviors.[8] In addition, D.M. was reported to be autistic, one of the children was an infant, and S.S., at 14 years of age, was a child herself and bore the burden of caring for all the children. It is clear from the record S.S. suffered mental and emotional distress. The record supports inferences that this harm may have been caused by and/or been exacerbated by having to care for the children for such extended periods of time. The totality of these factors exacerbated the risk of harm resulting from the parents' failure to supervise the children. Further, the children were not enrolled in school, and by the children's reports, mother did not teach them for any substantial amount of time. As a result of the parents' actions alleged in the second two counts, M.M. reported feeling afraid when the parents engaged in domestic violence, and S.S. and other children reported that father had "smacked" S.S. across the face on more than one occasion. The evidence supporting jurisdiction on this record is ample.

Mother attempts to frame the parents leaving the children with S.S. as "poverty-related." Mother contends the children were left alone so the parents could seek work. However, this claim was expressly rejected by the trial court. The court pointed out the

---

[8] Mother highlights M.M.'s mental health issues and difficult behavior in an attempt to show that the parents' failure to supervise her was not unreasonable. However, in our view, this evidence supports the juvenile court taking jurisdiction because it underscores the failure to protect that the parents exhibited by leaving her with S.S., a 14-year-old girl who was also in charge of six other children including two infants.

14.

parents' statements regarding how often they left the children alone were inconsistent and the children stated it happened every day for hours at a time, sometimes extending late into the night. The court pointed out those circumstances did not seem related to searching for work. We also point out while mother insists that she and father both were at a job interview at the time the children were initially removed, father reported to the police that he was at the job interview, but mother was at the mall having her watch fixed. This detail raises questions as to the credibility of the parents' contentions about leaving the children to search for work and also undermines mother's claim it was necessary for them to leave the children unsupervised. We conclude the court's factual finding was reasonable and supported by evidence on the record.

The juvenile court's jurisdictional findings were supported by substantial evidence, and the court did not improperly rely solely upon poverty-related issues.[9]

### B.    *Dispositional Findings Under Section 361, Subdivision (c)*

A dependent child shall not be taken from the physical custody of his or her parents unless the juvenile court finds clear and convincing evidence of, as relevant here, "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there

---

[9]    Through mother's reply brief, mother moves to strike a portion of respondent's brief wherein respondent writes: "Mother placed the blame for the children's removal on S.S. when she hugged all of the children except S.S. and told her, 'because of you, my kids are being taken away.' Such a blatant lack of personal responsibility demonstrates that mother's failure to recognize the issues posed a continued risk of detriment to the children that the juvenile court recognized as an inability to protect the children in the future. (RT 389; See also *In re Gabriel K.* (2012) 203 Cal.App.4th 188, 197 ['One cannot correct a problem one fails to acknowledge'].)" Mother contends this portion of respondent's brief should be stricken because the assertion was not supported by the citation provided by respondent. We note that though respondent's citation was incorrect, through our independent review of the record, we find adequate support for the assertion at page 276 of Clerk's Transcript. We deny mother's motion as moot, noting we have not given credence to any argument advanced not adequately supported by the record or case law.

15.

are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's … physical custody." (§ 361, subd. (c)(1).)

Mother contends the evidence was insufficient to support the juvenile court's findings pursuant to section 361, subdivision (c). We disagree.

In determining whether substantial evidence supports the juvenile court's dispositional findings, we must account for the clear and convincing standard of proof. (*Conservatorship of the Person of O.B.* (2020) 9 Cal.5th 989, 1011.) The question before us is "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Ibid*.) We "view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id*. at pp. 1011-1012.)

Mother contends the evidence did not support a finding by clear and convincing evidence that (1) returning home would pose a substantial danger to the children; (2) reasonable means were available to protect the children without removal; and (3) the department did not make reasonable efforts to prevent removal.

We conclude substantial evidence supported all the court's findings. First, the parents posed a substantial danger to the children's safety because they left their children, including children with special needs and an infant, in the care of a 14 year old, who was parentified and in need of mental health treatment herself, for most of the day, every day, and engaged in domestic violence in the presence of the children. The danger continued at the time of disposition because the parents had failed to accept responsibility for the reason their children were removed. They both consistently blamed S.S. for the children's removal. Both parents failed to engage in services, including participating in a domestic violence index assessment, despite engaging in domestic violence in the

16.

presence of the children being a direct basis for jurisdiction. Further, the parents lived together and maintained a relationship until disposition.

Mother states the evidence supporting danger to the children was focused on father—that he refused to participate in services unless court ordered, left meetings, followed the children's caretakers, and threatened social workers requiring police intervention. Mother contends she expressed willingness to participate in services but requested they be offered locally, participated in meetings, and was not reported as "threatening on her own." Mother's attempt to shift responsibility onto father is not well taken. For the reasons stated, it is clear mother, as well as father, posed a danger to the children. In addition, though mother expressed a willingness to participate in services, she declined to participate in the services referred to her by the department. She insisted she would participate in Stanislaus County, where she claimed to live, but failed to work with the department to verify residency so they could obtain referrals for services or initiate a transfer of the case.

Mother contends "reasonable means," which existed to prevent removal of the children from her care, included psychiatric care for M.M., daycare, housing and financial support, and removing father from the home. We are not persuaded. As we have discussed, mother had not begun to take responsibility for the reasons her children were removed. Mother's neglect of the children, paired with a violent relationship, which she had not taken steps to acknowledge, would not be ameliorated by services she now suggests should have been offered to prevent the children's removal. More importantly, she did not follow through with verifying her residence, which prevented the department from assessing the home, rendering any services mother now says she should have been offered futile.

Mother argues her case is like *In re Ashly F.* (2014) 225 Cal.App.4th 803 (*Ashly F.*) In *Ashly F.*, the mother physically abused two children. (*Id.* at p. 806.) The father was not aware of the abuse. (*Ibid.*) In its dispositional report, the social services

17.

agency stated, without citing any evidence, that it made " 'reasonable efforts' " to prevent the children's removal and there were no " 'reasonable means' " to protect them. (*Id.* at p. 808.)  The appellate court concluded there was ample evidence of " 'reasonable means' " to protect the children because mother was remorseful, the parents had enrolled in parenting classes, the parents were no longer a couple, and the agency should have considered "unannounced visits …, public health nursing services, in-home counseling services and removing Mother from the home."  (*Id.* at p. 810.)  Thus, the dispositional order was reversed.  (*Id.* at p. 811.)

In contrast here, for the reasons already discussed, there was no evidence on the record that the parents had begun to ameliorate the reasons for the children's removal.

The record contained evidence by a clear and convincing standard there was a risk to the children and there were no reasonable means the children could be protected without removal.

## II.    Court's Denial of a Continuance

Mother contends the juvenile court erred by denying counsel's request for continuances on September 3 and September 9.  We disagree.

We review the juvenile court's denial of a continuance for abuse of discretion; discretion is abused when a decision is arbitrary, capricious or patently absurd and results in a manifest miscarriage of justice.  (*In re D.Y.* (2018) 26 Cal.App.5th 1044, 1056.)

Section 352 provides that upon request, the juvenile court may continue a dependency hearing beyond the time limit within which the hearing is otherwise required to be held so long as it is not contrary to the interest of the minor.  (§ 352, subd. (a)(1).) "In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (*Ibid.*)  "Continuances shall be granted only upon a showing of good cause and only for

18.

that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (*Id.*, subd. (a)(2).)

Mother contends good cause to continue the hearing was established by mother's counsel being newly appointed, not having had the opportunity to communicate with mother, and not having the complete file. We cannot say the juvenile court's decision to deny the continuance, even in light of these issues, was arbitrary, capricious, or patently absurd. Though mother frames the issue as one regarding counsel's preparedness, the court was clear its decision was based on the parents' unexplained failure to appear at the hearing as well as the previous hearing. The court noted its decision was made in the interest of permanence for the children. This was reasonable. Continuances in juvenile dependency proceedings are disfavored, particularly when they infringe on maximum time limits under the code. (*In re David H.* (2008) 165 Cal.App.4th 1626, 1635.) Pursuant to section 352, subdivision (b), the juvenile court shall not grant a continuance that would result in a dispositional hearing taking place more than 60 days after the detention hearing unless the court finds there are "exceptional circumstances." Here, the children were detained from the parents in May, and the jurisdictional and dispositional hearings took place in September, four months later. The court's finding that "exceptional circumstances" did not exist to continue the hearing was reasonable.

When a parent is absent without good cause at a properly noticed hearing, the court is entitled to proceed in the parent's absence. (*In re Christopher A.* (1991) 226 Cal.App.3d 1154, 1162.) An unjustified failure to appear at a duly noticed hearing reflects a parent's choice not to attend. (*In re Gerald J.* (1991) 1 Cal.App.4th 1180, 1187.) "A court may properly treat this choice as a waiver of the right to be present *at that hearing* and of the benefits of being present. Imposing this waiver is a sensible and limited response to the parent's decision to be absent. Further, allowing the court to proceed in the parent's absence should ensure that the court, the minor and the other

parties are not unduly disadvantaged." (*In re Vanessa M.* (2006) 138 Cal.App.4th 1121, 1131–1132.)

Here, as both parents had missed two hearings in a row, for which they had actual notice, and were not engaging with services, it was reasonable for the court to proceed without them in the interest of permanence for the children, as it was not clear whether or when the parents would participate in a continued hearing.

Mother also contends the court erred by failing to continue the hearing for seven days, citing section 353. In pertinent part, section 353 provides that at a hearing on a dependency petition, if new counsel is appointed to a party, "[t]he court shall continue the hearing for not to exceed seven days … to enable counsel to acquaint himself or herself with the case." The appellate court in *In re C.P.* (1985) 165 Cal.App.3d 270 (*C.P.*) explained that under section 353, the court has discretion to determine whether a continuance under this section is necessary; if the court finds it necessary, it is required to continue the hearing even absent a request. (*C.P.*, at p. 273.) Mother contends the court abused its discretion here, relying on *C.P.* We find *C.P.* distinguishable.

In *C.P.*, counsel was appointed for the father, who lived out of state, two days before the jurisdictional hearing. (*C.P.*, *supra*, 165 Cal.App.3d at p. 272.) Counsel had not been able to contact the father and had not discussed the case with him. (*Ibid.*) The father appealed alleging he was denied due process at the jurisdictional hearing through denial of the opportunity to be heard. (*Id.* at p. 273.) The appellate court found reversible error in failing to continue the hearing, emphasizing on a parent's right to notice and an opportunity to be heard at a jurisdictional hearing in a dependency case. (*Id.* at p. 271.) The continuance was necessary to provide the father a reasonable opportunity to prepare for the hearing. (*Id.* at p. 274.)

Here, mother notably does not assert she was not properly noticed of the hearing nor does she contend any of her constitutional rights were violated by the court proceeding without her present. Mother, too, had submitted a contested statement of

issues highlighting several arguments prepared by her previous counsel. As we have discussed, the juvenile court's focus was on the parents' failure to appear at the hearing, not counsel's preparedness. While under different circumstances, the timing of the jurisdictional hearing in relation to Woodward's appointment may be a basis for an abuse of discretion, but given the facts of this case, we find no such abuse. The September 9 date was retained because the parents were not present on September 3, and the court wanted an opportunity to address the parents. When the parents failed to appear at a second consecutive hearing, without explanation, the court could reasonably infer a willful failure to appear and waiver of the right to be present. We find no error.

## III.    Alleged Ineffective Assistance of Counsel

Mother contends attorneys Woodward provided ineffective assistance of counsel by failing to: (1) communicate with mother after appointment; (2) ensure a complete file; (3) object to the alleged incorrect information in the reports about mother's case in Missouri; (4) request a continuance under section 353; and (5) put facts on the record to support a good cause to grant a continuance.

A claim of ineffective assistance of counsel may be reviewed on direct appeal when there is no satisfactory explanation for trial counsel's act or failure to act. (*In re N.M.* (2008) 161 Cal.App.4th 253, 270.) To prevail on such a claim, mother must demonstrate: "(1) counsel's representation fell below an objective standard of reasonableness; and (2) the deficiency resulted in demonstrable prejudice." (*In re Kristen B.* (2008) 163 Cal.App.4th 1535, 1540.) We must affirm the judgment unless the record "affirmatively establishes counsel had no rational tactical purpose for the challenged act or omission …." (*Id.* at p. 1541.) In addition, we may reject mother's claim if she cannot show it is reasonably probable the result would have been more favorable to her but for trial counsel's alleged failings. (*In re N.M.*, at p. 270.) Thus, if mother fails to demonstrate prejudice, we need not examine whether her counsel's performance was deficient. (*Ibid.*)

Mother contends we can address her complaints on direct appeal because there is no satisfactory explanation for trial counsel's failures. Without addressing whether this claim is appropriate to address on direct appeal, we conclude mother has not demonstrated that she suffered prejudice arising from the alleged omissions and reject her claim.

Mother makes few claims of prejudice other than to make the conclusory statement that absent counsel's alleged failures there "certainly would have [been] a reasonable probability that the outcome of the hearing would have been different." She cites two additional facts from the record to support this conclusory statement: (1) the court pointed out that counsel was not putting facts on the record to support a continuance; and (2) the Missouri case "played a large role in the reasoning of the court." We do not find that either of mother's assertions lead to the conclusion there would have been a more favorable outcome of the hearing to mother. That is, we are not persuaded that the omissions mother contends were ineffective assistance would have resulted in a different jurisdictional or dispositional order, notwithstanding whether the continuance was granted or not.

We start by noting the evidence supporting jurisdiction and the disposition was strong. Mother's defenses, as stated in her statement of contested issues prepared by her previous attorney, which the juvenile court had before it, were relatively weak. In her statement of contested issues, mother disputed the substance abuse allegations. The court agreed and struck the substance abuse allegations. Mother contended there was "no evidence" that mother left the children home alone every day. This claim is rebutted by the children's statements, to which the court expressly gave credence. Finally, mother contends there was "no evidence" that mother and father engaged in domestic violence in the presence of the children, citing D.M.'s statement that he had not witnessed it. Again, this claim is rebutted by the children's statements, to which the court expressly gave credence. Further, mother herself admitted she had to call 911 due to domestic violence.

22.

As for mother's argument against removal, she claimed no danger was posed to the children because there was "no evidence" of substance abuse or domestic violence or that mother "continuously or at any time leaves her children unattended without a responsible person watching over them." As we have explained, mother's claims were rebutted by evidence the court expressly relied upon. Mother argues "reasonable means" the department should have considered to prevent removal were unannounced visits, parenting classes and counseling, and transportation referrals. As we have discussed, because mother was not engaging with services that were offered, these additional services would not have reasonably prevented removal.

With her first claim of prejudice, mother suggests the court may have granted the continuance had counsel put reasons on the record supporting good cause for mother's absence. This claim is speculative because, based on this record, we do not have any facts supporting good cause for mother's absence.[10] Accordingly, mother cannot show prejudice because we cannot say whether such facts, which do not exist on the record, would have persuaded the court to continue the hearing. The court had denied mother's counsel's requests for continuances despite their statements on the record that they had not had contact with mother, that they could not present evidence on the section 388 petition or cross-examine the social worker without her assistance. Further, as we have explained, mother also has not persuaded us of a reasonable probability that such a continuance would have resulted in an overall more favorable outcome in terms of jurisdiction or disposition.

---

**10** Mother makes a passing remark in her reply brief that the social worker informed the parents the trial was going to be rescheduled and they did not need to appear. Mother provides no citation to the record to support this assertion, nor can we find one in our review of the record. Even if this fact were supported by the record and known to the court, we are not convinced it would have persuaded the court to continue the hearing based on the totality of the court's other comments.

We do not agree with mother's assertion that the Missouri case "played a large role in the reasoning of the court" so as to constitute reversible error attributable to mother's counsel's failure to object to its admission as we have discussed. The court mentioned the Missouri case in a string of previous cases,[11] finding the cases viewed in the aggregate demonstrated the parents tended to be transient. The juvenile court found this to be one factor among many supporting its decisions to take jurisdiction and remove the children from the parents' custody. Based on the record, we cannot conclude the Missouri case was in any way a deciding factor in the court's decision. Thus, we conclude there is not a reasonable probability that even if this information had been objected to and stricken from the record that the juvenile court would not have taken jurisdiction over the children or removed them from the parents' custody.

We cannot say mother has shown us demonstrable prejudice arising from her allegations of ineffective assistance of counsel. Accordingly, her claim fails.

## DISPOSITION

The juvenile court's jurisdictional and dispositional orders are affirmed.

DE SANTOS, J.

WE CONCUR:

MEEHAN, Acting P.J.

SNAUFFER, J.

---

**11** The department's jurisdictional report outlined several previous referrals that were either unfounded, inconclusive, or evaluated out in San Diego County, Stanislaus County, Lake County, and Fresno County.